UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBIN ODACH<br><br>                              Plaintiff,<br><br>          -against-<br><br>AERPIO PHARMACEUTICALS, INC.,<br>JOSEPH GARDNER, STEVEN PRELACK,<br>CALEY CASTELEIN, CHERYL COHEN,<br>ANUPAM DALAL, and PRAVIN DUGEL<br><br>                              Defendants. | CASE NO.: _____ |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Robin Odach ("Plaintiff"), on behalf of herself, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against Aerpio Pharmaceuticals, Inc., ("Aerpio" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Aerpio, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed merger of Aadi Bioscience, Inc. ("Aadi"), a privately-held biopharmaceutical company, with Aerpio.

2.     On May 16, 2021, Aerpio and entered into an Agreement and Plan of Merger (the

"Merger Agreement"), providing for Aerpio's acquisition of Aadi, pursuant to a merger between Aerpio and Aadi, through Aerpio's wholly owned subsidiaries Aspen Merger Subsidiary, Inc. ("Merger Sub").  Pursuant to the Merger Agreement, Aerpio and Aadi will combine through a merger of Merger Sub with and into Aadi with Aadi as the surviving corporation as a wholly owned subsidiary of Aerpio ("Proposed Transaction").  In connection with the merger, Aerpio will change its name to "Aadi Bioscience, Inc."

3.        Pursuant to the terms of the Merger Agreement, Aadi stockholders will receive approximately 5.5096 of Aerpio common stock for each share of Aadi common stock they currently own, without consideration of a proposed reverse stock split, as adjusteddue to subsequent financing transactions ("Merger Consideration"). Immediately following the Proposed Transaction, Aadi's former stockholders are expected to own approximately 66.8% of the combined company, on a fully-diluted basis, and Aerpio's stockholders will own approximately 33.2% of the combined company.

4.        On June 21, May 27, 2021, in order to convince Aerpio's public common stockholders to vote in favor of the Proposed Transaction, Defendants, together with Aadi took a step forward and authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on Form 14A (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.        In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Aadi prepared by Aerpio management; and (ii) the key inputs for the financial analyses performed by Ladenburg Thalmann & Co. Inc. ("Ladenburg"), and to support their fairness opinions.

6.        The Proposed Transaction is expected to close early in the third quarter of 2021 and

the special meeting of the Company's stockholders to vote on the Proposed Transaction can be scheduled at any time. It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting of Aerpio stockholders so Plaintiff can properly exercise her corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Plaintiff and Aerpio's public common stockholders sufficiently in advance of the special meeting of the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has

minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  Indeed, Aerpio's common stock is listed and traded on the Nasdaq Capital Market ("NASDAQ"), which is also headquartered in this District.

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the holder of Aerpio common stock.

12.     Defendant Aerpio is a Delaware corporation that maintains its principal place of business at 9987 Carver Road,  Cincinnati, OH.  Aerpio's common shares are traded on the NASDAQ under the ticker symbol "ARPO."

13.     Individual Defendant Joseph Gardner, is the President and founder of the Company and has been a Director of Aerpio since 2011.

14.     Individual Defendant Steven Prelack has been a Director of Aerpio since 2017.

15.     Individual Defendant Caley Castelein, has been a Director of Aerpio since 2017.

16.     Individual Defendant Cheryl Cohen has been a Director of Aerpio since 2018.

17.     Individual Defendant Anupam Dalal, has been a Director of Aerpio since 2011.

18.     Individual Defendant Pravin Dugel has been a Director of Aerpio since 2017.

19.     The defendants identified in paragraphs 13 through 18 are collectively referred to herein as the "Individual Defendants" or the "Board."  The Individual Defendants together with Aerpio, are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

20.     Aerpio is a biopharmaceutical company focused on developing compounds that activate Tie2 to treat ocular diseases and diabetic complications.  In March 2019, the Company announced top line results of the Phase 2b ("TIME-2b") clinical trial of AKB-9778 for the treatment of non-proliferative diabetic retinopathy ("NPDR"), a disease characterized by progressive compromise of blood vessels in the back of the eye. While the Company initially believed AKB-9778 had the potential to slow down or possibly reverse retinal vascular changes caused by diabetes, the subcutaneous administration of AKB-9778 twice daily did not meet the study's primary endpoint of increasing the percentage of patients with an improvement of two or more steps in diabetic retinopathy severity score ("DRSS"), in the study eye, compared to placebo.  The TIME-2b study, however, supported the reduction of intraocular pressure ("IOP") seen with subcutaneous AKB-9778 in the previous TIME-2 study. Importantly, IOP is the only identified modifiable risk factor for prevention of vision loss in patients with open angle glaucoma ("OAG") and ocular hypertension ("OHT").   Based on these findings, Aerpio developed a topical ocular formulation of AKB-9778 and observed in preclinical studies activation of Tie2 in Schlemm's canal, IOP reduction via enhanced outflow facility and favorable tolerability.   In two consecutive trials, TIME-2 and TIME-2b, subcutaneous AKB-9778 showed reduction in Urine Albumin-Creatinine Ratio ("UACR"), a measure of progression of diabetic kidney disease.  In a post-hoc analysis of the earlier TIME-2 clinical trial, there was a 21% reduction (geometric mean) in UACR from baseline in the AKB-9778 treatment arms, but an overall increase in UACR in the placebo arm.  The prospective UACR analyses from the recently completed TIME-2b trial largely replicated the results from the previous trial and reinforced the

5

potential beneficial effects of Tie2 activation in diabetic kidney disease.  The Company believes that systemic treatment with AKB-9778 could have the potential to change the treatment paradigm for diabetics in the future and potentially address a major societal problem by lowering the cost of care associated generally with diabetes.

21.     Aadi is a clinical stage biopharmaceutical company developing precision therapies for genetically-defined cancers. Aadi's primary goal is to bring transformational outcomes to cancer patients with mTOR pathway driver alterations where other mTOR inhibitors have not or cannot be effectively exploited due to problems of pharmacology, effective drug delivery, safety, or effective targeting to the disease site. Aadi's product FYARROTM (sirolimus albumin-bound nanoparticles for injectable suspension; nab-sirolimus; ABI-009) is an mTOR inhibitor bound to human albumin that has demonstrated significantly higher tumor accumulation, mTOR target suppression, and superior efficacy over other mTOR inhibitors in preclinical models.3 Aadi's initial focus is on treating patients with alterations in TSC1 or TSC2 genes, tumor suppressors that when inactivated, may be drivers in many different cancer types. Aadi's registration trial in advanced malignant PEComa (the AMPECT trial) of FYARRO demonstrated meaningful clinical efficacy in malignant PEComa4, a type of cancer with the highest known mutation rate of TSC1 or TSC2 genes. Based on the AMPECT trial, emerging data for FYARRO in other solid tumors with TSC1 or TSC2 mutations, and following discussions with the FDA, Aadi plans to initiate a tumor-agnostic registrational trial in cancers harboring TSC1 or TSC2 inactivating alterations by the end of 2021.  Aadi also has ongoing studies to evaluate dosing of FYARRO in combination regimens. More information is available on the Aadi website at www.aadibio.com. Aadi has submitted an abstract1 to the ASCO 2021 meeting.

22.     On May 16, 2021, Aerpio's Board caused the Company to enter into the Merger

Agreement with Aadi.  Pursuant to the terms of the Merger Agreement, Aadi stockholders will receive approximately 5.5096 of Aerpio common stock for each share of Aadi common stock they currently own, without consideration of a proposed reverse stock split, as adjusted due to subsequent financing transactions.

23.    On May 17, 2021 Defendants issued a press release announcing the Proposed Transaction, which stated in relevant part:

### Aerpio Pharmaceuticals and Aadi Bioscience Enter into a Definitive Merger Agreement

- Transaction to create Nasdaq-listed company focused on advancing Aadi Bioscience's late-stage pipeline for genetically-defined cancers with alterations in mTOR pathway genes

- Concurrent $155 million PIPE financing is backed by leading life science investors led by Acuta Capital Partners and KVP Capital and including Avoro Capital Advisors; Avoro Ventures; Venrock Healthcare Capital Partners; BVF Partners, L.P.; Vivo Capital; Alta Bioequities, L.P.; Rock Springs Capital; RTW Investments, LP; Acorn Bioventures; and Serrado Capital LLC

- Combined company cash at closing will fund operations into 2024

- Rolling NDA submission to the FDA for FYARRO™ in advanced malignant perivascular epithelioid sarcoma (PEComa) expected to be completed in mid-2021

- FYARRO™ preliminary data in patients with solid tumors harboring inactivating alterations in the mTOR pathway genes TSC1 and TSC2 to be presented at ASCO 20211

- FYARRO™ tumor-agnostic registrational trial in solid tumors harboring inactivating alterations in the mTOR pathway genes TSC1 and TSC2 expected to be initiated by the end of 2021

CINCINNATI, Ohio and PACIFIC PALISADES, California, May 17, 2021 – Aerpio Pharmaceuticals, Inc. ("Aerpio") (Nasdaq: ARPO), a biopharmaceutical company focused on developing compounds that activate Tie2, and Aadi Bioscience, Inc. ("Aadi"), a privately-held biopharmaceutical company focusing on precision therapies for genetically-defined cancers with alterations in mTOR pathway genes, announced their entry into a definitive merger agreement.

Following the proposed merger, Aerpio will change its name to "Aadi Bioscience, Inc." and the combined public company will focus on advancing Aadi's lead product candidate, FYARRO™ (sirolimus albumin-bound nanoparticles for injectable suspension; nab-sirolimus; ABI-009).

In support of the merger, Aerpio has entered into subscription agreements to raise $155 million in a Private Investment in Public Equity (PIPE) financing led by Acuta Capital Partners and KVP Capital and including Avoro Capital Advisors; Avoro Ventures; Venrock Healthcare Capital Partners; BVF Partners, L.P.; Vivo Capital; Alta Bioequities, L.P.; Rock Springs Capital; RTW Investments, LP; Acorn Bioventures; and Serrado Capital LLC as well as other undisclosed institutional investors.

The PIPE financing is expected to be consummated concurrently with the closing of the merger. Proceeds from the PIPE financing are intended to be used for commercialization of FYARRO in advanced malignant PEComa and a planned tumor-agnostic registrational trial in solid tumors harboring inactivating alterations in the mTOR pathway genes TSC1 and TSC2 expected to be initiated by the end of 2021. Aadi's first indication, advanced malignant PEComa, is an ultra-rare sarcoma enriched in TSC1 and TSC2 alterations. Aadi has received Orphan designation, Fast Track designation and Breakthrough Therapy designation from the FDA for FYARRO for the treatment of patients with advanced malignant PEComa. Together with the cash expected from both companies, the net proceeds of the PIPE financing are expected to fund the company into 2024, enabling potential approval and commercial launch in PEComa as well as completion of a registrational trial in tumors harboring TSC1 or TSC2 inactivating alterations.

Caley Castelein, a board member of Aerpio and the proposed chairman of the combined company stated, "Aerpio's board of directors diligently undertook a comprehensive strategic review and has concluded that the proposed transaction with Aadi is in the best interest of our shareholders. We believe Aadi's late-stage development program may offer significant medical benefit to PEComa patients and important potential for patients with tumors harboring TSC1 or TSC2 inactivating alterations."

Dr. Neil Desai, founder and chief executive officer of Aadi, added, "FYARRO met its safety and efficacy endpoints in our study in patients with advanced malignant PEComa2 and this finding supports our approach of targeting mTOR pathway altered cancers with FYARRO. We are excited about the next chapter of growth for Aadi, thankful for the support of our investors, and are energized to continue to develop important new treatment options for our patients."

Anupam Dalal, chief investment officer of Acuta Capital Partners stated, "Together with a group of renowned institutional investors, we are excited to partner with Aadi as it advances FYARRO and strives to unlock the potential of mTOR as a therapeutic target."

Upon closing of the transaction, the combined company will be led by Aadi's chief executive officer, Neil Desai, and headquartered in Los Angeles, California. Aadi's board members Neil Desai and Richard Maroun; Aadi's board observer Karin Hehenberger; and current Aerpio board members Anupam Dalal and Caley Castelein will be members of the board of directors of the combined company. In addition, Behzad Aghazadeh, managing partner of Avoro Capital Advisors and Avoro Ventures, will also join the board of the combined company upon the closing of the transaction.

**About the Proposed Transaction**

Under the terms of the merger agreement, shareholders of Aadi will receive shares of newly issued Aerpio common stock. On a pro forma basis, shareholders of Aadi will own approximately 66.8% and shareholders of Aerpio will own approximately 33.2% of the combined company upon the closing of the merger, prior to the additional PIPE financing transaction. Following the closing of the concurrent PIPE financing, Aerpio shareholders will own approximately 14.7% of the combined company. The actual allocation is subject to adjustment based on Aerpio's cash balance at the time of closing.

The terms of the merger agreement contemplate that a non-transferable contingent value right (a "CVR") will be distributed to Aerpio shareholders as of immediately prior to the effective time of the merger, entitling CVR holders to receive net proceeds received by Aerpio, if any, associated with Aerpio's legacy assets. The terms and conditions of the CVRs will be pursuant to a CVR Agreement Aerpio will enter into prior to the closing of the merger (the "CVR Agreement").

The merger agreement has been approved by the boards of directors of both companies. The transaction is expected to close in the third quarter of 2021, subject to approval by Aerpio's shareholders, the completion of the PIPE financing, and customary closing conditions. The PIPE financing is expected to close concurrently with, and is conditioned upon, the closing of the merger.

Additional information about the transaction will be provided in a Current Report on Form 8-K that will be filed by Aerpio with the Securities and Exchange Commission ("SEC") and will be available at www.sec.gov.

Ladenburg Thalmann & Co. Inc. is acting as financial advisor to Aerpio for the transaction and Goodwin Procter LLP is serving as its legal counsel. Perella Weinberg Partners LP and Piper Sandler & Co. are acting as financial advisors to Aadi for the transaction and Wilson Sonsini Goodrich & Rosati, P.C. is serving as legal counsel to Aadi. Jefferies LLC; Cowen and Company, LLC; and Piper Sandler & Co. are acting as placement agents for the PIPE financing.

* * *

## I.   The Proxy Omits Material Information

24.       On June 21, 2021, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The special meeting of Aerpio stockholders to vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

### A.       <u>Materially Misleading Statements and Omissions Regarding Aerpio and Aadi's Financial Projections</u>

25.       The Proxy fails to provide material information concerning financial projections by and unaudited financial projections for Aadi prepared by Aerpio management ("Aadi Projections") which were relied upon by the Board in recommending the Proposed Transaction, as well as Ladenburg in its financial analysis to issue its fairness opinion. The Proxy discloses these management-prepared Aadi Projections which are materially misleading. Proxy 120.  These non-public financial projections were provided to the Board to support its recommendation of the Proposed Transactions, and to Ladenburg in rendering its fairness opinions with respect to the Proposed Transaction.  Accordingly, the Proxy should have, but fails to provide, certain information in the projections that Aerpio management provided to the Board and the financial advisors.  Proxy 118-120.

26.       For example, the Proxy states that the PEComa Revenues assumed initial 10.0% penetration in 2022 to maximum market penetration of 85.0% in 2031 and assumes a total patient population of 100 patients. Similarly the TSC1/TSC2 Revenues assumed to have an initial

penetration rate of 1.7% in 2021, which rises to a maximum rate of 83.1% by 2035 with a maximum year-over-year patient population increase of 1.4%. Also assumes a price increase of approximately 4% year-over-year in the U.S. market with a 15% net discount. Lastly, the Risk Adjusted Unlevered Free Cash Flow suffers from a similar problem because the metric was adjusted downward to account for the probability of success given the probability of success for PE Coma (90%) and TSC1 / TSC2 (63.6%), which was determined by analyzing the "Estimation of clinical trial success rates and related parameters" white paper published in 2018. However, the Proxy does not provide the basis for these assumptions and discounts to the metrics.

27.     Investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest.  Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation.  Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear:  Is the Merger Consideration fair to Aerpio stockholders given Aadi's projected cash flows?  Without the line items underlying Aadi's unlevered free cash flows Aerpio stockholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

28.     For this reason, Courts have recognized that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29.     If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability

for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1124-1125 (8th Cir. 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Ladenburg, but have omitted crucial line items and reconciliations. Thus, Defendants' omission renders the projections disclosed on pages 196-197 of the Proxy misleading.

        B.      <u>Materially Incomplete and Misleading Disclosures Concerning the Financial Analyses</u>

30.      With respect to Ladenburg's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the line items used to calculate Aadi's unlevered free cash flows; (ii) the inputs and assumptions used to calculate the adjustment to the Aadi revenue assumptions in the years 2024 to 2035 by 90% for PECo and 63.5% for TSC1/TSC2; (iii) the inputs and assumptions underlying the discount rates ranging from 12.9% to 16.9%;  and (iv) the inputs and assumptions used to determine Aadi would have no terminal value in 2035.  Proxy, 128-129.

31.      These key inputs to Ladenburg's analysis renders the summary of Ladenburg's *Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion ***unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Aerpio's shareholders cannot evaluate for themselves the reliability of Ladenburg's *Discounted Cash Flow Analysis – Aerpio* and *Discounted Cash Flow Analysis -- Aadi*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Ladenburg, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

32. With respect to Ladenburg's *Analysis of Selected Initial Public Offering Transactions* the Proxy fails to disclose Ladenburg's estimates of the pre-money equity value plus indebtedness, liquidation value of preferred stock and non-controlling interest, minus cash and cash equivalents at the time of its IPO for each of the companies observed by Ladenburg to determine the total enterprise value for each IPO. Proxy, 124-125

33. With respect to Ladenburg's *Analysis of Selected Publicly Traded Companies*, the Proxy fails to disclose the individual multiples and metrics for the companies observed by Ladenburg. Proxy, 125-127.

34.     With respect to Ladenburg's *Analysis of Selected Precedent M&A Transactions* the Proxy fails to disclose: (i) the dates on which each of the selected transactions observed closed; and (ii) the inputs and assumptions used to determine the enterprise value for the transactions observed.  Proxy, 127-128.

C.     Materially Incomplete and Misleading Disclosures Concerning the Financial Analyses

35.     The Proxy states that the Aerpio Board also directed Aerpio management to work with the second financial advisor to explore opportunities for transactions involving the Company Assets. Proxy, 106. However, no information about the "second financial advisor" is disclosed, including its identity, terms of compensation (if any) or a fair summary of any analyses performed by them. Similarly, the Proxy does not disclose the reasons the Aerpio Board terminated the engagement of the "second financial advisor" on April 14, 2021.

36.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41.     Defendants have issued the Proxy with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) Aerpio management's financial projections for Aadi prepared by management of the two companies; and (ii) the key inputs for the financial analyses performed by Ladenburg in support of its fairness opinion.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's common stockholders although they could have done so without extraordinary effort.

43.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Board and Aerpio's management all reviewed and assessed financial projections for Aerpio and Aadi, and further states that the Board considered the fairness opinion provided by Ladenburg and the assumptions made and matters considered in connection therewith, which included financial projections for Aerpio and Aadi. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved

in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

45.     Aerpio is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

46.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of the Company's stockholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of Aerpio within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Aerpio, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

51.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  July 6, 2021                                    **MONTEVERDE & ASSOCIATES PC**

                                                         */s/ Juan E. Monteverde*
                                                         Juan E. Monteverde (JM-8169)
                                                         The Empire State Building
                                                         350 Fifth Avenue, Suite 4405
                                                         New York, NY 10118
                                                         Tel: (212) 971-1341
                                                         Fax: (212) 202-7880
                                                         Email: jmonteverde@monteverdelaw.com

                                                         *Attorneys for Plaintiff*